# THE UNITED STATES, Ex Rel. THE MUTUAL DISTRICT MESSENGER COMPANY

*v.*

# WIGHT.

---

PRACTICE; MANDAMUS; OVERHEAD WIRES IN THE DISTRICT OF COLUMBIA.

1. Upon an appeal from a judgment denying the prayer of a petition for a *mandamus*, which judgment is founded upon the facts alleged in the petition and in the respondents' return, it will be assumed that the substantial statements in the return which traverse the allegations of the petition, are true; *following* United States, ex rel. Washington, *v.* Johnson, 12 App. D. C. 545.

2. *Mandamus* will not lie upon the petition of a foreign corporation engaged in the business of maintaining, by means of electric wires, a general call, messenger and burglar alarm service in this District, to compel the Commissioners to grant the relator permission to string an overhead wire over a sidewalk within the District but beyond the city limits, in order to connect a private residence with a street wire, whether the Commissioners have the power under existing statutes to grant such permission or not, the decision of the Commissioners upon such an application being an official action not subject to judicial review, and not involving the exercise of a mere ministerial duty.

3. A request by the relator in such a proceeding that this court express an opinion as to the authority of the Commissioners, if so inclined, to grant licenses of the character involved therein, *denied*, with the statement that the correctness of the averment in the return of the Commissioners denying that they possess such authority is involved in some doubt.

No. 924. Submitted November 9, 1899. Decided December 5, 1899.

HEARING on an appeal by the relator from a judgment of the Supreme Court of the District of Columbia dismissing a petition for a writ of *mandamus* to the Commissioners of the District of Columbia. *Affirmed.*

The COURT in its opinion stated the case as follows:

The relator, the Mutual District Messenger Company, is a corporation organized under the laws of the State of West Virginia for the purpose of engaging in business in the District of Columbia.

It owns certain wires, and leasehold interests in wires, connecting its office, on the corner of F and Fourteenth streets in the city of Washington, with a great number of houses in said city, and in the county of Washington. By means of these wires it maintains a general call and messenger service throughout the District, provides a supervision of private watchmen for banks and so forth, maintains a regular alarm system, and cares for private residences during the absence of their owners. The provision for watching and guarding houses is alleged to be one of great usefulness

and benefit to the citizens on account, specially, of the inadequacy of police protection.

In the petition filed on June 22, 1899, to obtain a writ of *mandamus* to the District Commissioners, it is alleged, that relator owns a wire attached to poles of the Chesapeake and Ohio Telephone Company that runs along Columbia road in the county of Washington, and passes the residence of Rear Admiral Thomas O. Selfridge, Jr., which is situated at the corner of said road and Kalorama avenue. One of the said poles stands on the sidewalk of the road directly in front of said house, and to connect the same with the wire thereon, the connecting wire would run across about four feet of the sidewalk.

The said Selfridge, expecting to be absent from his home during the summer of 1899, applied to the relator to connect its wire with his said home and install its burglar alarm system therein.

On May 8, 1899, relator made application to the Commissioners for leave to string the said wire across the sidewalk; and the same was accompanied by a letter from said Selfridge pointing out his need of the protection of relator's service, and asking that the application be granted. This application was refused by the Commissioners for want of authority to grant the same, and their reply also stated that the wire along Columbia road had been "strung without authority and exists in violation of law."

Relator further alleged that the Commissioners have exclusive jurisdiction over all the public roads in the District, outside the limits of the city of Washington, and have full authority to grant the permission applied for. It denied the want of authority for the maintenance of its wire along Columbia road, and charged that the refusal of the application had been arbitrarily made, without any just cause or reason. It is further alleged that the electric current carried on its wires is not dangerous to person or property.

Certain affidavits were attached to the petition, tending to support the facts alleged therein, and to show that the wire along Columbia road had been maintained for about seven years, and that it had been the custom of relator and other corporations, previous to the year 1896, to string wires in the county of Washington without permission, all of which was well known to, and had been acquiesced in by, the Commissioners during that period.

The District Commissioners made return under oath, to the rule to show cause, alleging, that "the large majority of the wires strung and used by the said petitioner, and the house connections made by it, are illegally existing overhead wires, and the same were put up and maintained without authority of law and without the knowledge or permit of the Commissioners of the District; that they never issued any permit to the petitioner for any house connections whatever, and that the said petitioner has uniformly refused to inform these respondents as to the location of its aforesaid wires or of its aforesaid house connections, although requested by these respondents so to do."

They admit the facts alleged in regard to the application for the connection with the Selfridge house, and their refusal to grant the same because "they are without legal authority to permit the erection or maintenance of overhead wires in the District of Columbia by the said petitioner." They further allege that they are advised that they have no legal authority to grant the application; and that the authority to grant permissions for house connections for the electric service has no application to the relator and the business carried on by it. They specially deny that the wire on Columbia road was erected, or now exists, by authority of any law; that it had been the custom to erect said wires without permission and with the acquiescence of the Commissioners; and that their action in refusing the application in this case had been arbitrary and without just reason or cause. They further say that the

only permission to repair wires ever given by them had been limited to apply only to " those existing on July 18, 1888, that being the date after which the Commissioners were prohibited by Act of Congress from permitting the stringing of additional overhead wires."

The case was heard on the petition and affidavits of the relator and the return of the respondents, and the petition was denied and dismissed. From this judgment the appeal has been prosecuted.

*Mr. Walter V. R. Berry* and *Mr. Benjamin S. Minor* for the appellant.

*Mr. A. B. Duvall,* Attorney for the District of Columbia, and *Mr. Clarence A. Brandenburg,* Assistant Attorney, for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The judgment denying the relator's prayer having been founded on the facts as alleged in the petition and in the respondent's return, we must consider the case upon the assumption that the substantial statements in the return, which traverse allegations of the petition, are true. · *United States, ex rel. Washington,* v. *Johnson,* 12 App. D. C. 545, 550. These statements are : (1) That the relator's wire on Columbia road, sought to be connected with the premises of Admiral Selfridge, was erected and is maintained without the 'authority of the Commissioners. (2) That existing house connections of the relator in the city of Washington have been made and maintained without permission of the Commissioners, and that their demand for information respecting the same has been refused. (3) That the refusal of the permission in controversy was not arbitrarily made; but because the Commissioners are fairly of the opinion that it is beyond their power under existing laws.

2. It is doubtless true, as claimed by the relator, that the Commissioners would have granted the application,

notwithstanding their present denial of the legal right of relator to maintain the existing wire in Columbia road, had not they entertained the opinion that they were without power to do so under existing laws.

Upon this assumption we are asked to compel their action on the ground that they have plainly erred in that conclusion ; or, if unwilling to go so far in the present case, then, at least, to declare what is the extent of their power in the premises, so that they may be advised in respect of future applications of the same character.

(1) As regards the first of these propositions, it may be said without recital of the statutory provisions relied on, that they do not expressly confer upon the Commissioners the power to grant licenses or special privileges for the occupation or use of the highways in the District, much less command them to extend such grants upon application. If the power exists it is by construction of the general provision of Sec. 247, R. S. D. C., giving the Commissioners "the care and charge of, and the exclusive jurisdiction over" roads in the District, enlarged or restrained, as the case may be, by later provisions, from time to time, in the appropriation bills for the support of the District government. See appropriations for the years ending June 30, 1889 ; June 30, 1891; June 30, 1897; June 30, 1898.

Whenever called upon for a grant or license relating to the public roads, they must necessarily determine the extent of their authority in the premises by the construction of these statutory provisions.

The duty to expound involves the exercise of judgment. From the decisions of the Commissioners in the performance of their official duties, no appeal lies to the courts of the District. Nor are the courts otherwise invested with power to review their decision, or to guide and control them in any official action whatever, where the decision made or action taken involves the exercise of discretion. That the performance of the duty or the act involves nothing more

than an interpretation of a statute does not alter the rule. The governing rule of action for the courts in such cases has been plainly declared by the Supreme Court of the United States in the following words: "The court will not interfere by *mandamus* with the executive officers of the Government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose; but when they refuse to act in a case at all, or when, by special statute, or otherwise, a mere ministerial duty is imposed upon them, that is, a service which they are bound to perform without further question, then, if they refuse, a *mandamus* may be issued to compel them." *United States, ex rel. Dunlap,* v. *Black,* 128 U. S. 40, 48. See, also, *Decatur* v. *Paulding,* 14 Pet. 497, 515; *Seymour* v. *South Carolina,* 2 App. D. C. 240, 246; *Lochren* v. *Long,* 6 App. D. C. 486, 505.

(2) We are constrained for several reasons to deny the request for the expression of a positive opinion in respect of the authority of the Commissioners, if so inclined, to grant licenses of the character involved herein.

Primarily, the existence of the power is founded on the early statute which provided that the then legislative assembly "shall have the care and charge of, and the exclusive jurisdiction over, all the public roads and bridges, except such as belong to and are under the care of the United States, and except such as may be otherwise specially provided for by Congress." Compiled Stat. D. C. 267. A previous act declared all roads, outside of the cities of Washington and Georgetown, duly laid out, etc., to be public highways. *Idem.*

When this act was passed Columbia road was in fact a country highway, not only outside the strict limits of the city of Washington, but also beyond the overlapping growth of the city in houses and improvements. At and before the time of this application, it had, at the point in question, all the appearances of a city street, laid out, improved and

paved as such; and there was little or nothing to suggest to the eye that it was not in fact within the limits of the city.

In subsequent legislation of Congress, contained in appropriation bills before referred to, from 1888 to the present time, are to be found many provisions relating to the erection and maintenance of the wires of telegraph, telephone and electric lighting companies upon and across streets and highways, without distinction in most of the instances, between those within and those without the actual or apparent limits of the city.

The foregoing conditions suggest some of the difficulties that beset the Commissioners in deciding the question, whether they really possessed the power claimed for them; and the most that we feel justified in saying is, that the correctness of the answer thereto is involved in some doubt.

It is not within the province of the court to advise executive officers in regard to the exercise of functions committed to them by law. It is only in a case between parties where rights depend upon a power that has been exercised, that the courts are called upon to determine the question of its existence.

Moreover, it is possible that there may be other parties claiming rights under, or adverse to, similar grants or licenses that may have been heretofore conferred, whose interests might be seriously prejudiced by the expression of a decided opinion before they could be heard.

3. If it were conceded, however, that the Commissioners are clearly possessed of the power to grant the application, and that for a mistaken interpretation of the law in that respect they would be amenable to the process of the court, it would not follow that the relator ought to have the benefit of the writ.

There must be something more than the possession of the power by the Commissioners to justify their compulsion into its exercise. By some command of the law they must,

at the same time, owe the exercise of the power as a duty to the relator.

*Mandamus* can only lie, where there is no other legal remedy, to compel performance of an act when that performance has been imposed as a positive duty to, or on behalf of, the party asking the remedy.

Grant the amplitude of the power, and that its exercise, as applied for, would be of advantage to certain public and private interests, and detrimental to none; and assume that the Commissioners have wilfully failed in their duty to the public interests committed to their keeping, yet what legal duty have they denied the fulfilment of to the relator?

A general duty to the public is not a special duty to the relator, or one that he can require the performance of through resort to the courts. The remedy for such a condition is not judicial but political, and must be sought of the legislature.

The relator makes no pretence of the possession of a franchise under which it is invested with a right to demand the license. Its corporate franchise even is not derived from an Act of Congress. Its sole claim to the remedy it seeks is founded on the public benefit and the duty of the Commissioners in respect thereof. Created under the laws of West Virginia, it came into the District of Columbia, where, by the acquiescence of the municipal government, it has been for some years engaged in a business of great public convenience. Desiring to extend its benefits to the citizen who joined in the application, it became necessary to obtain the permission of the Commissioners to string a wire over the sidewalk. Not being required by any law to grant the request, they elected to deny it; and that is the end of it unless Congress shall intervene.

Nothing can be plainer, we think, than that the relator has no right involved here which a court can undertake to enforce. The judgment must be affirmed, with costs. It is so ordered.                    *Affirmed.*